Revised May 3, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-41601
_____

KATHY CLIFT, ETC; ET AL

                    Defendants

KATHY CLIFT, Kathy Clift as guardian of John Ryan Clift
and Jennifer Lee Clift

                         Defendant - Cross Claimant -
                         Appellee

v.

PAMELA SUE CLIFT, now known as Pamela Sue Page

                         Defendant - Cross Defendant -
                         Appellant

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY

                         Interpleader

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
April 12, 2000
Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

KING, Chief Judge:

    Defendant-Cross Defendant-Appellant Pamela Sue Clift, now

known as Pamela Sue Page, appeals from the district court's grant

of summary judgment in favor of Defendant-Cross Claimant-Appellee Kathy Clift.  We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Prior to his death in July of 1997, Phillip Clift ("Phillip") was twice married and twice divorced.  He and his first wife, Appellee Kathy Clift ("Kathy"), had two children, Jennifer Lee and John Ryan.  Phillip and Kathy divorced, and Phillip married his second wife, Appellant Pamela Sue Page, ("Pamela"), in 1995.  They divorced shortly before he died. Upon his death, Phillip held a life insurance policy through his employer in which he designated Pamela as the sole beneficiary.

When it came time for the life insurance proceeds to be paid out, Pamela claimed that she was entitled to them in light of Phillip's designation of her as beneficiary.  Kathy, as guardian of her and Phillip's two children, claimed that when Phillip and Pamela divorced, Pamela waived her right to the life insurance proceeds.  Under the terms of the policy, therefore, the children were entitled to the proceeds.  Connecticut General Life Insurance Company, the provider of the policy in question, was uncertain to whom it should pay benefits, and this action ensued.

Very little is disputed in this case.  The parties agree that before their divorce, Phillip named Pamela as the beneficiary of the proceeds from his life insurance policy.  They

agree that the policy in question was offered by Phillip's employer through an employee benefit plan that is subject to and governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and that therefore the policy itself is subject to ERISA. They agree that Phillip and Pamela divorced, and that their Texas divorce decree provided, "[Phillip] is awarded the following as [his] sole and separate property, and [Pamela] is hereby divested of all right, title, interest, and claim in and to such property: . . . Any and all policies of life insurance (including cash value) insuring the life of [Phillip]." Record at 138-39. They agree that Pamela consented to the terms of the divorce voluntarily and that the settlement between Phillip and Pamela was made in good faith. Finally, they agree that if Pamela has waived her right to the insurance proceeds, the children are entitled to them. The only question in the case is whether Pamela waived her right to the proceeds from Phillip's life insurance policy in their divorce decree.

Pamela and Kathy filed competing motions for summary judgment in the district court. The district court entered a judgment granting Kathy's motion and denying Pamela's, from which judgment Pamela timely appeals.

## II. STANDARD OF REVIEW

3

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance. See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). We must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We construe an unambiguous divorce decree de novo. See Webb Carter Constr. Co. v. Louisiana Central Bank, 922 F.2d 1197, 1199 (5th Cir. 1991).

### III.  DISCUSSION

In Brandon v. Travelers Ins. Co., 18 F.3d 1321 (5th Cir. 1994), we were confronted with a situation very similar to the one before us now. Richard Brandon had designated his wife, Wanda, as the primary beneficiary of the proceeds of a life insurance policy he held through his employer. The policy was governed by ERISA. The couple later divorced, and Richard

4

subsequently died without changing beneficiaries.  The couple's

divorce decree provided, in part:

> Petitioner [Richard] is awarded the following as
> Petitioner's sole and separate property, and Respondent
> [Wanda] is divested of all rights, title, interest, and
> claim in and to such property ... (8) Any and all sums,
> whether matured or unmatured, accrued or unaccrued, vested
> or otherwise, together with all increases thereof, the
> proceeds therefrom, and any other rights relating to any
> profit-sharing plan, retirement plan, pension plan, employee
> stock option plan, employee savings plan, accrued unpaid
> bonuses, or other benefit program existing by reason of
> Petitioner's past, present, or future employment.

Id. at 1323.  We were asked to decide whether Wanda had waived

her right to the proceeds from the life insurance policy in the

divorce decree or whether the beneficiary designation controlled.

We first ruled that the anti-alienation provisions of ERISA do

not prevent waiver of a beneficiary interest in a life insurance

policy governed by ERISA.  See id. at 1324.  This left us with

the question of whether the language of the divorce decree before

us in that case constituted an effective waiver of Wanda's

beneficiary interest in the policy insuring Richard's life.  We

determined that the question was governed by federal common law

rather than state law, but we looked to analogous state law for

guidance.  See id. at 1326.  Our analysis in that case was

informed by cases from two sister circuits.  We briefly review

those cases here, as we did in Brandon.

In Lyman Lumber Co. v. Hill, 877 F.2d 692 (8th Cir. 1989),

Jeffrey Hill designated his wife, Colleen, as primary beneficiary

under his employer's profit-sharing plan.  The Hills were later

5

divorced, and Jeffrey died without changing the primary beneficiary designation.  The Hills' divorce decree stated that Jeffrey "'shall have as his own, free of any interest of [Colleen], his interest in the profit-sharing plan of his employer . . . .'" Id. at 693 (alteration in original).  The Court of Appeals for the Eighth Circuit held that because the divorce decree did not "specifically refer to and modify the beneficiary interest" in the profit-sharing plan, it did not revoke Colleen's interest, and she was entitled to the distribution.  See id. at 694.  The court reached that result even though the divorce decree "gave Jeffrey his entire interest in the Plan free of any interest of Colleen."  Id. at 693.

Shortly after the decision in Lyman Lumber, the Court of Appeals for the Seventh Circuit, sitting en banc, was presented with a similar case.  Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275 (7th Cir. 1989) (en banc), concerned lump-sum death benefits provided for in a pension plan governed by ERISA.  James Brown named his wife, Laurine, as beneficiary under the plan.  James and Laurine divorced and agreed to a court-approved property settlement that provided that "[t]he parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party."  Id. at 277.  James died without changing the beneficiary on his pension plan.

6

The court, in fashioning federal common law, looked to Illinois law which provided that "a decree of divorce only affects the rights of a divorced spouse if a property settlement agreement specifically includes a provision terminating the beneficiary's interest." Id. at 281. The court determined "that the waiver contained in the marital property settlement specifically dealt with the pension fund benefits, including the Death Benefit at issue in [the] case." Id.

In Brandon, we followed the approach used by the Eighth and Seventh Circuits in Lyman Lumber and Fox Valley and looked to the federal common law to determine whether the language from Richard and Wanda's divorce decree constituted a sufficient waiver of Wanda's beneficiary interest in the proceeds of Richard's life insurance policy. Like the Fox Valley court, we looked to state law to inform the rule we fashioned under the federal common law. See id. at 1326. "[W]e adopt[ed] the Texas rule creating a presumption of waiver absent redesignation following divorce." Id. We modified that rule, however, by requiring that "any waiver be voluntary and in good faith." Id. We stated later in the opinion that we "requir[ed] under federal common law that any waiver of ERISA benefits be explicit, voluntary, and made in good faith." Id. at 1327. The decree in Brandon stated that Wanda was "divested of all rights, title, interest, and claim in and to . . . proceeds []from . . . any . . . benefit program existing by reason of [Richard's] past, present, or future employment." Id.

7

at 1323.  We held that this language was sufficient to constitute a bona fide waiver of Wanda's beneficiary interest in the life insurance policy.  See id. at 1327.

Relying on the holding in Lyman Lumber and our requirement of explicitness in Brandon, Pamela invites us to set forth a rule in this case that waiver in a divorce decree of one's beneficiary interest in a life insurance policy governed by ERISA can only be effected by specifically listing the "proceeds," "beneficiary interest," or the like.  We decline her invitation.  Our holding in Brandon does not require, as Pamela seems to suggest, that certain "magic" words be used to accomplish an effective waiver of a beneficiary interest.  Such rigidity is unnecessary and will undoubtedly frustrate the intentions of those who choose to divorce.

While Brandon does not require that particular language be used to waive a beneficiary interest, it likewise does not stand for the proposition that waiver will be assumed absent language to the contrary.  In Brandon, we looked to state law in fashioning a rule yet explained that "wholesale adoption of the Texas redesignation statute [would] not sufficiently protect the interests of beneficiaries."  Id. at 1326.  One method of protecting those interests is to require that waiver be explicit, meaning that waiver should not be inferred from a divorce decree that is completely silent on the issue.  Requiring actual waiver language rather than relying on silence helps protect the

8

interests of beneficiaries.  Moreover, the task of determining voluntariness and good faith would be overly-complicated were silence sufficient to constitute waiver.  We will only find waiver if, upon reading the language in the divorce decree, a reasonable person would have understood that she was waiving her beneficiary interest in the life insurance policy at issue.  Additionally, as we stated in Brandon, any waiver must be voluntary and made in good faith.

Here, Pamela entered into the agreement in her divorce decree voluntarily, and the agreement was made in good faith.  Pamela simply argues that the language of the decree was insufficient to constitute waiver of her beneficiary interest.  We disagree.  The divorce decree provided that "[Pamela] is hereby divested of all right, title, interest, and claim in and to . . . [a]ny and all policies of life insurance (including cash value) insuring the life of [Phillip]."  Record at 138-39.  This language is clear enough to trigger the presumption of waiver.  It placed Pamela on notice that she was waiving any and all interests in the life insurance policy.  Had she intended to retain her beneficiary interest, she should have demanded that the divorce decree so provide.

## IV.  CONCLUSION

9

For the foregoing reasons, the judgment of the district court is AFFIRMED.