Diana WEAVER, Independent Executrix of the Estate of Francis J. Weaver and Rita Marie Wilson Weaver, Appellants,

v.

Patsy KEEN, Appellee.

No. 10–99–305–CV.

Court of Appeals of Texas, Waco.

Jan. 10, 2001.

Opinion Overruling Rehearing April 18, 2001.

Steven W. Sloan, Thompson & Knight, L.L.P., Dallas, for appellant.

Maurice Bresenhan, Jr., Zukowski & Bresenhan, L.L.P., Houston, for appellee.

Before Chief Justice DAVIS Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

At issue is whether under federal law a former spouse, who was designated as the primary beneficiary of an ERISA[1]-qualified pension plan, is entitled to the proceeds under that plan. The former spouse argues that ERISA requires the administrator to follow the plan documents, *i.e.*, pay the designated beneficiary (the former spouse) despite an intervening divorce. The contingent beneficiary's estate argues that the Texas "redesignation statute," as applied through federal common law, prevents the former spouse from receiving such benefits. Because we agree with the contingent beneficiary's estate, we reverse the trial court's judgment and hold as a matter of law that the contingent beneficiary's estate is entitled to the proceeds of the pension plan. We remand.

---

1. Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1999 & Supp.2000).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Francis J. (Frank) Weaver and Patsy Keen were married in 1967. During a portion of their marriage, Frank was employed by Baylor College of Medicine. In 1972, Frank purchased two annuity contracts issued by Teacher's Insurance and Annuity Association and College Retirement Equities Fund (TIAA–CREF). He named Patsy as the primary beneficiary of those annuity contracts. Baylor College of Medicine made contributions to the annuity contracts until 1980 when Frank terminated his employment. In 1982, Frank and Patsy divorced. As part of the property settlement, Frank received the annuity contracts as his sole and separate property.

Frank married Diana in 1983. They were married for eleven and one-half years before his unexpected death in 1995. At the time of Frank's death, Patsy remained the beneficiary designated on Frank's TIAA–CREF annuity contracts. The plans' administrators, relying on this designation and the plan documents, paid part of the death-benefits to Patsy.

Frank's mother, Rita Weaver, the contingent beneficiary under each plan, died shortly after this lawsuit was filed. Diana, as the independent executrix of both Frank's and Rita's estates, continued this suit against Patsy and the plans' administrators to recover the proceeds of Frank's pension plans (annuity contracts). The plans' administrators interpleaded the remaining benefits and obtained an order absolving them from further liability on the plans, other than to pay the benefits according to a final judgment.

The suit was tried to the court. The primary issue was whether under federal law a former spouse designated as the primary beneficiary of an ERISA-qualified pension plan is entitled to the proceeds under that plan. The court found that Patsy was entitled to the benefits and awarded her attorney's fees. This appeal followed.

## II. ARGUMENTS

Patsy argues that section 1104(a)(1)(D) of ERISA specifically controls. 29 U.S.C.A. § 1104(a)(1)(D) (West 1999). That section requires that a plan be administered "in accordance with the documents and instruments governing the plan." *Id.* Accordingly, Patsy claims that the administrators were obligated to follow the plan documents and pay her as the named beneficiary despite her divorce. *See id.* Alternatively, Patsy claims that Frank's pension plan is governed by New York law, which dictates that the beneficiary designation controls. Patsy also argues that Diana lacks standing to seek the benefits.

Diana argues that Patsy specifically waived any claim to proceeds from the pension plans through her agreed settlement agreement and divorce decree. The agreement provided:

Section 4

*DIVISION OF EMPLOYEE BENEFITS*

. . .

4.02 *Community Ownership.* Husband has earned certain employee benefits arising out of present and past employment and the parties agree that Husband shall own all of said pension, profit sharing, retirement and deferred compensation benefits of all kinds resulting from his present and past employment as his sole and separate property, without any claim thereto by

Wife.[2]

. . .

## Schedule 2
### PROPERTY TO HUSBAND

. . .

(6) All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, or like benefit program existing by reason of Husband's past, present, or future employment, including but not limited to:

. . .

b) The Teachers' Insurance and Annuity Association–College Retirement Equities Fund.

Alternatively, Diana claims that by virtue of Patsy's and Frank's divorce, section 9.302 of the Texas Family Code,[3] as applied through federal common law, prevents Patsy from receiving such benefits. That section provides:

§ 9.302. **Pre Decree Designation of Ex–Spouse as Beneficiary in Retirement Benefits and Other Financial Plans**

(a) If a decree of divorce or annulment is rendered after a spouse, acting in the capacity of a participant, annuitant, or account holder, has designated the other spouse as a beneficiary under an individual retirement account, employee stock option plan, stock option, or other form of savings, bonus, profit-sharing, or other employer plan or financial plan of an employee or a partici-pant in force at the time of rendition, the designating provision in the plan in favor of the other former spouse is not effective unless:

(1) the decree designates the other former spouse as the beneficiary;

(2) the designating former spouse redesignates the other former spouse as the beneficiary after rendition of the decree; or

(3) the other former spouse is designated to receive the proceeds or benefits in trust for, on behalf of, or for the benefit of a child or dependent of either former spouse.

(b) If a designation is not effective under Subsection (a), the benefits or proceeds are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the designating former spouse.

TEX. FAM.CODE ANN. § 9.302(a), (b) (Vernon 1998).

## III. STANDARD OF REVIEW

■ Whether under federal law a former spouse designated as the primary beneficiary of an ERISA-qualified pension plan is entitled to the proceeds under that plan is a question of law. *See Clift v. Clift,* 210 F.3d 268, 269–70 (5th Cir.2000); *see Emmens v. Johnson,* 923 S.W.2d 705, 712 (Tex.App.—Houston [1st Dist.] 1996, writ denied). We apply a de novo standard of review to questions of law. *Lee v. Mitchell,* 23 S.W.3d 209, 212 (Tex.App.—Dallas 2000, pet. denied). A trial court's legal conclusion will be upheld on appeal unless it is erroneous as a matter of law. *Mack v. Landry,* 22 S.W.3d 524, 528 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

---

2. The agreement contains an identical provision divesting Frank of employee benefits related to Patsy's employment.

3. Sometimes referred to as the "redesignation statute."

## IV.  DISCUSSION ·

■ Initially, we address Patsy's standing argument.  It is undisputed that the TIAA–CREF annuity contracts are "employee pension benefit plans," as defined by ERISA.  29 U.S.C.A. § 1002(2)(A) (West 1999).  Frank Weaver designated Patsy as the primary beneficiary and his mother, Rita Weaver, as the contingent beneficiary of these contracts.  Diana, as the independent executrix of Rita Weaver's estate, brought suit against Patsy and the two plans' administrators on grounds that the primary designation is no longer enforceable.

Under ERISA, the term "beneficiary" means a person designated by a participant, or by terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.  29 U.S.C.A. § 1002(8).  A beneficiary may bring a cause of action "to recover benefits due to him under the terms of [the] plan."  29 U.S.C.A. § 1132(a)(1)(B) (West 1999).  Because Rita's estate "may become entitled" to the pension benefits, if Patsy's designation is unenforceable, we find that Diana as the independent excecutrix of Rita's estate has standing.  *Id.* § 1002(8); *see Emmens,* 923 S.W.2d at 706–07.

Congress passed ERISA in 1974 to establish a comprehensive federal scheme for the protection of participants and beneficiaries of employee benefit plans.  *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987).  ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C.A. § 1144(a) (West 1999).  A state law "relates to" an employee benefit plan when the law has "a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

■ There is no doubt that Diana's claims on behalf of the estate, to the extent that they rely directly upon the Texas redesignation statute, cannot be sustained because the Texas statute is preempted.  Likewise, we reject Patsy's argument that Frank's pension plan is governed by New York law because it is also preempted.  Almost every federal circuit court to consider the issue has determined that a state law governing the designation of an ERISA beneficiary "relates to" the ERISA plan, and is therefore preempted.[4]  *Manning v. Hayes,* 212 F.3d 866, 870 (5th Cir.2000).

Having established that state law is preempted, we must determine the applicable federal law which will govern the resolution of this dispute.  *Id.*  In making this determination, we "look to either the statutory language [of ERISA] or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law."  *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325 (5th Cir.1994).  There is presently a circuit split on this issue.  *Manning,* 212 F.3d at 870.

4.  *See also Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857, 862 (4th Cir.1998); *Mohamed v. Kerr,* 53 F.3d 911, 913 (8th Cir.1995); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 15 (2d Cir.1993); *Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 906 (10th Cir.1991); *Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1195 (11th Cir.1991); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 278 (7th Cir.1989).  *But see In re Estate of Egelhoff,* 139 Wash.2d 557, 989 P.2d 80, 92 (1999), *cert. granted,* 530 U.S. 1242, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000).  In *Egelhoff,* the Washington Supreme Court held that the Washington statute equivalent to section 9.302 of the Texas Family Code was not preempted by ERISA.

### A. The Minority Approach

Patsy contends that ERISA section 1104(d) expressly requires that plan benefits be paid directly to the designated beneficiary and, further, bars any inconsistent federal common law permitting a broader inquiry.

The Sixth Circuit is the only circuit to unambiguously employ this approach. *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 421 (6th Cir.1997) (citing *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990)). That circuit holds that plan administrators are to "follow plan documents to determine the designated beneficiary." *Id.* Thus, under the minority rule, the named beneficiary always prevails, without regard to any other circumstances or provisions of law. *See id.*

Patsy also claims the Supreme Court's decision in *Boggs,* which applied an expansive preemption analysis, supports this approach. *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). *Boggs* involved a clear case of conflict preemption in a different context. *Id.,* 520 U.S. at 840, 117 S.Ct. at 1760. It is asserted here for the proposition that ERISA precludes reliance upon federal common law when resolving a dispute between a named ERISA beneficiary and another claimant.

These arguments were recently presented to and rejected by the Fifth Circuit [5] in *Manning. Manning,* 212 F.3d at 870–74. We agree with the court's analysis and conclusion and find no reason to restate them here. *See id.*

### B. The Majority Approach

A majority of the federal circuit courts which have considered this issue recognize that ERISA does not expressly address this circumstance. *Brandon,* 18 F.3d at 1326; *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown,* 897 F.2d 275, 278 (7th Cir.1990); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). One of our sister courts, the First Court of Appeals, has agreed. *Emmens,* 923 S.W.2d at 712. These courts have held that the issue is governed by federal common law. *Manning,* 212 F.3d at 871; *Emmens,* 923 S.W.2d at 712.

### 1. The Federal Courts: Waiver Required

At least three federal courts have concluded that under federal common law the designated beneficiary can waive rights to plan proceeds. *Brandon,* 18 F.3d at 1327; *Fox Valley,* 897 F.2d at 280; *Lyman,* 877 F.2d at 693. In *Brandon,* the Fifth Circuit examined federal common law to determine whether a spouse designated during marriage as an ERISA beneficiary of a life insurance policy waived her benefits in an agreed divorce decree. *Brandon,* 18 F.3d at 1324. The court followed the approach of the Eighth and Seventh Circuits and looked to state law for guidance. *Id.,* at 1326–27 (citing *Fox Valley,* 897 F.2d at 280–81; *Lyman,* 877 F.2d at 693).

Accordingly, the court adopted section 9.302 [6] as a matter of federal common law, construing it to create a presumption of waiver absent redesignation following divorce. *Id.* at 1326. However, the court modified that federal common law by adding a requirement that "any waiver be voluntary and in good faith." *Id.* The Fifth Circuit recently reaffirmed this rule and has since applied it to employee pension benefit plans. *Manning,* 212 F.3d at 871; *Clift,* 210 F.3d at 271; *Rhoades v.*

---

5. In *Manning v. Hayes,* 212 F.3d 866, 868 (5th Cir.2000), Hayes was represented by the attorney who represents Patsy.

6. Actually, the Texas law relied upon in *Brandon* has been recodified. We cite to the current section for ease of reference.

*Casey,* 196 F.3d 592, 600 (5th Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000).

### 2. The Houston Court: Divestment Imposed

The First Court of Appeals recently analyzed this issue as it relates to profit sharing plans. *Emmens,* 923 S.W.2d at 707. *Emmens* similarly involved a beneficiary designation of a former spouse which was not changed following a divorce. *Id.* In determining applicable federal common law, the court determined that *Brandon's* approach was incorrect because "the waiver issue [is] irrelevant[.]" *Id.* at 710. The court also disagreed with *Brandon's* characterization of section 9.302 as creating a presumption of waiver, reasoning that it simply nullifies the designation. *Id.* The court stated:

> ... Beneficiary status is not lost because of the intent of the spouses (other than the intent to divorce), but because of the act of the legislature. It is the legislature's intent, expressed in the statute, not the parties' intent, that controls. Moreover, even if waiver were the issue, the *Brandon* approach has disadvantages. It encourages disputes by requiring a "little" bill of review proceeding in cases like this to determine whether an agreed property settlement was, in respect to ERISA assets, sufficiently voluntary, explicit, and in good faith. We see no need for this procedure. Waiver of ERISA benefits is not against public policy. Beneficiaries may waive their interests. 29 U.S.C. § 1055(c)(1)(A)(i); *Fox Valley,* 897 F.2d at 279. If state courts are "suitably armored" to protect these rights, as *Brandon* states, then the waiver should not have to be proved first in state courts and then again in federal courts. Once is enough.

*Id.* at 710–11. The court then adopted the rule of section 9.302, without modification, as federal common law on the issue and held that divorce automatically terminated a former spouse's designation as the primary beneficiary under an ERISA plan. *Id.* at 712.

## V. APPLICATION

■ We agree with the majority approach that ERISA does not expressly address whether a former spouse designated as the primary beneficiary of an ERISA-qualified pension plan is entitled to the proceeds under that plan. *Brandon,* 18 F.3d at 1326; *Fox Valley,* 897 F.2d at 278; *Lyman,* 877 F.2d at 693; *Emmens,* 923 S.W.2d at 712. It follows, then, that the issue is governed by federal common law. *Manning,* 212 F.3d at 871.

■ On questions of federal common law, we are bound to follow only the decisions of the United States and Texas Supreme Courts. *Emmens,* 923 S.W.2d at 709. The decisions of other federal courts are persuasive authority only. *Id.* We recognize their superior expertise in federal law. *Id.* Nevertheless, we are entitled to follow the federal common law of any federal circuit we find persuasive. *Id.* We find guidance in the Fifth Circuit's and our sister court's approach. *See id.; Manning,* 212 F.3d at 871.

■ These facts are very similar to those in *Brandon. Brandon,* 18 F.3d at 1327. As in *Brandon,* Frank and Patsy signed a voluntary property settlement agreement that included an explicit mutual waiver of any rights each had in the other's pension plan. *See id.* During the divorce, only Patsy was represented by counsel. *See id.* Patsy's attorney drafted the settlement agreement and divorce decree which specifically provided that Patsy would have no ownership or beneficial rights in Frank's pension plans. *See id.*

The settlement agreement awarded Patsy a portion of the community estate, including both a condominium and a car. It was approved by the court as "just and right" at Patsy's request. Thus, if we were to apply *Brandon,* we would find her "waiver" to be voluntary and in good faith, and Patsy would not be entitled to the proceeds. *See id.*

In applying our sister court's approach, we need not look any further than the fact that Frank and Patsy were divorced. *Emmens,* 923 S.W.2d at 712. According to section 9.302, applied as federal common law, the divorce terminated Patsy's designation as the primary beneficiary unless she was (1) designated in the decree, (2) redesignated by Frank after the divorce, or (3) designated as a trustee for a child or dependent. Tex.Fam.Code Ann. § 9.302(a). These exceptions are absent from the record. Thus, if we were to follow *Emmens,* we would find that Patsy is not entitled to the proceeds. *Emmens,* 923 S.W.2d at 712.

We agree with our sister court's approach. As a result, under federal common law, Patsy is not entitled to the proceeds of Frank's pension plans, because the divorce automatically terminated her designation as the primary beneficiary and none of the alternative designations of 9.302(a) are applicable. *See id.*

## VI. CONCLUSION

We find that the Texas redesignation statute, applied as federal common law, prevents a former spouse from receiving ERISA-qualified pension plan benefits, absent an alternative designation. Having determined that the trial court erred in making a contrary finding, we find the

award of attorney's fees to Patsy was likewise improper. We reverse the trial court's judgment and hold that Diana as the independent executrix of Rita's estate, the contingent beneficiary, was entitled to the proceeds of the pension plan. We remand the cause to the trial court for further proceedings consistent with this opinion.

## OPINION DENYING MOTION FOR REHEARING

On January 10, 2001, we determined that the Texas redesignation statute, applied as federal common law, prevents a former spouse from receiving ERISA-qualified pension plan benefits, absent one of its exceptions. *Weaver v. Keen,* 43 S.W.3d 537, 544 (Tex.App.—Waco Jan. 10, 2001, no pet. h.). Having determined that the trial court erred in making a contrary finding, we reversed the judgment and remanded for further proceedings. *Id.*

On rehearing, Keen requested that we defer our decision pending the United States Supreme Court's disposition of *Egelhoff v. Egelhoff,* which addresses similar issues. The United States Supreme Court has since issued *Egelhoff v. Egelhoff,* —— U.S. ——, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). We find that it does not affect the analysis applicable to this case.

The only issue in *Egelhoff* was whether ERISA[1] preempts a Washington statute providing that the designation of a spouse as the beneficiary of an employee benefit plan is revoked automatically upon divorce. *Id.* at ——, 121 S.Ct. at 1327-28. The Supreme Court held that it does. *Id.* at ——, 121 S.Ct. at 1328-29. The Court reasoned that giving effect to state statutes that purport to revoke beneficiary designa-

---

1. Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1999 & Supp.2000).

tions would require plan administrators "to master the relevant laws of 50 States" and would make uniform national plan administration impossible. *Id.* Similarly, our opinion stated that federal law, not section 9.302 of the Texas Family Code, determined who was entitled to proceeds of an employee benefit plan. *Weaver,* 43 S.W.3d at 541. Thus, our conclusion that federal law controls is supported by *Egelhoff.*

Having established that our state law is preempted, we next determined the applicable federal law which governed the resolution of the dispute. *Id.* In making this determination, we looked "to either the statutory language [of ERISA] or, finding no answer there, to federal common law" which "may draw guidance from analogous state law." *Id.* (citing *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325 (5th Cir. 1994)). There is presently a circuit split on this issue. *Id.* (citing *Manning v. Hayes,* 212 F.3d 866, 870 (5th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1401, 149 L.Ed.2d 345, (2001)).

We agreed with the majority approach that ERISA does not expressly address whether a former spouse designated as the primary beneficiary of an ERISA-qualified pension plan is entitled to the proceeds under that plan. *Id.* at ——, 121 S.Ct. at 1328-29 (citing *Brandon,* 18 F.3d at 1326; *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown,* 897 F.2d 275, 278 (7th Cir.1990); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989); *Emmens v. Johnson,* 923 S.W.2d 705, 712 (Tex. App.—Houston [1st Dist.] 1996, writ denied)). We held, then, that the issue is governed by federal common law. *Id.*

At least three federal courts have concluded that under federal common law the designated beneficiary can waive rights to plan proceeds. *Brandon,* 18 F.3d at 1327; *Fox Valley,* 897 F.2d at 280; *Lyman,* 877 F.2d at 693. In *Brandon,* the Fifth Circuit examined federal common law to determine whether a spouse designated during marriage as an ERISA beneficiary of a life insurance policy waived her benefits in an agreed divorce decree. *Brandon,* 18 F.3d at 1324. The court followed the approach of the Eighth and Seventh Circuits and looked to state law for guidance. *Id.* at 1326–27 (citing *Fox Valley,* 897 F.2d at 280–81; *Lyman,* 877 F.2d at 693).

Accordingly, the court adopted section 9.302[2] as a matter of federal common law, construing it to create a presumption of waiver absent redesignation following divorce. *Id.* at 1326. However, the court modified that federal common law by adding a requirement that "any waiver be voluntary and in good faith." *Id.* The Fifth Circuit recently reaffirmed this rule in *Manning. Manning,* 212 F.3d at 871. On March 26, 2001, five days after *Egelhoff* was issued, the United States Supreme Court denied the petition for writ of certiorari in *Manning.* (*Manning v. Hayes,* —— U.S. ——, 121 S.Ct. 1401, 149 L.Ed.2d 345 (2001)).

The First Court of Appeals also analyzed the issue in this case as it relates to profit sharing plans. *Emmens,* 923 S.W.2d at 707. *Emmens* similarly involved a beneficiary designation of a former spouse which was not changed following a divorce. *Id.* In determining

---

**2.** Actually, the Texas law referred to in *Brandon* is former Family Code section 3.633. *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994). Section 3.633 was recodified as section 9.302 with changes not material here. Act of July 20, 1987, 70th Leg., 2d C.S., ch. 50, § 1, sec. 3.633, 1987 Tex.Gen. Laws 159, *recodified by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 1, sec. 9.302, 1997 Tex.Gen.Laws 1, 41. We cite to the current section for ease of reference.

applicable federal common law, the court determined that *Brandon's* approach was incorrect because "the waiver issue [is] irrelevant[.]" *Id.* at 710. The court also disagreed with *Brandon's* characterization of section 9.302 as creating a presumption of waiver, reasoning that it simply nullifies the designation. *Id.* The court then adopted the rule of section 9.302, without modification, as federal common law on the issue and held that divorce automatically terminated a former spouse's designation as the primary beneficiary under an ERISA plan. *Id.* at 712.

Accordingly, although we were guided by the Fifth Circuit's approach, ultimately we adopted our sister court's approach. *Weaver*, 43 S.W.3d at 544. That is, we adopted section 9.302, without modification, as federal common law on the issue and held that divorce automatically terminated a former spouse's designation as the primary beneficiary under an ERISA plan. *Id.* As a result, we found that the Texas redesignation statute, applied as federal common law, prevents a former spouse from receiving ERISA-qualified pension plan benefits, absent one of its exceptions. *Id.*

Because our approach was the same as the Fifth Circuit's approach in *Manning*, absent the modification, and because the United States Supreme Court has recently denied the petition for writ of certiorari in *Manning*, we continue to believe that our original disposition of this case was correct. Furthermore, as we stated in our original opinion, even under the Fifth Circuit's approach, we believe the record demonstrates that Patsy's "waiver" was voluntary and made in good faith. *Id.* at 544. Thus, *Manning* would also prevent her from receiving the proceeds. *Manning*, 212 F.3d at 871.

For these reasons, we deny the motion for rehearing.